Richard S. Busch (SBN 319881)
E-Mail: *rbusch@kingballow.com*
**KING & BALLOW**
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAVE LION, INC., *on behalf of Andrew Clay Silverstein, a/k/a Andrew Dice Clay* <br><br> Plaintiff, <br><br> vs. <br><br> PANDORA MEDIA, LLC, <br><br> Defendant. | Case Number: 22-cv-00817 <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff BRAVE LION, INC., on behalf of Andrew Clay Silverstein a/k/a Andrew Dice Clay, by and through its attorneys of record, alleges as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the action arises under the original and exclusive jurisdiction of the federal court and 28 U.S.C. § 1338(a) as the controversy arises under the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*).

2. This Court has personal jurisdiction over Defendant as discussed fully below.

3.  This Court has general personal jurisdiction over Pandora Media, LLC ("Pandora") because Pandora's principal place of business is in Oakland, California, while also having a substantial office in Santa Monica, California, meaning that Pandora is at home in the State of California. Furthermore:

   a. Upon information and belief, through January 28, 2022, Pandora was qualified to do business in California and was registered as a foreign corporation with the California Secretary of State.

   b. Pandora is also registered as a foreign limited liability company with the California Secretary of State.

   c. Pandora's designated DMCA Copyright Agent identified in its "Intellectual Property Policy" on its website is located in California at 2100 Franklin Street, 7th Floor, Oakland, California 94612.

   d. Pandora has previously admitted in other federal court filings that California has jurisdiction over it. *See*, Wixen Music Publishing, Inc. v. Pandora Media, Inc., Case No. 2:19-cv-5278-SVW (C.D. Cal.), Dkt. 15 (Pandora Media, Inc.'s Answer) at ¶¶ 16-17 ("Pandora admits that [it] has availed itself of California law . . . and venue is proper in the [Central District of California]").

4.  This Court has specific personal jurisdiction over Pandora because its suit-related conduct creates a substantial connection with the State of California and this Judicial District. BRAVE LION, INC., on behalf of Andrew Clay Silverstein, is a copyright owner of properly registered literary works (the "Works" or "Clay's Works") (*see* Exhibit A). Upon information and belief, Pandora has generated substantial revenue from exploitation of the Works in California, as further discussed below:

   a. Pandora actively and purposely does business in California, as evidenced by its (i) subscribers and users in California, which Pandora

2
COMPLAINT FOR COPYRIGHT INFRINGEMENT

actively reaches out to through, at a minimum, its website (www.pandora.com) and mobile app; (ii) contracts and other transactions that it has entered into in California; (iii) revenue generated from California residents and businesses in connection with its service; and (iv) advertisements that target California residents.

b. Pandora has purposefully availed itself of California law and could and did reasonably anticipate being brought into this Court because, among other reasons, Pandora (i) has been engaged and is engaged in infringing conduct within the State of California and this District, including by knowingly, intentionally, and repeatedly streaming sound recordings and the Works over the Internet to California residents via its services; (ii) knew or should have known that the harm caused by its repeated unlicensed public performance of the Works over the Internet was aimed at comedy writers and comedy publishers, including Plaintiff, who control the Works and are managed and administered in or near Los Angeles County, California, a global hub of the entertainment industry; and (iii) knew or should have known that Plaintiff, an industry leading comedian, actor and comedy writer for nearly 40 years, would suffer, and in fact did suffer, the brunt of the harm caused by Pandora's unauthorized acts in California and around the world.

5. This court has general personal jurisdiction over Plaintiff because Plaintiff has its principal place of business in Los Angeles, California.

## VENUE

6. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), and § 1400(a), as a substantial part of the events or omissions giving rise to the claim occurred in this district, including for example, by the maintenance of

Pandora's corporate office in Santa Monica, California. Plaintiff has its principal place of business in this District and has been injured in this District as a result of Pandora's infringing conduct.

## PARTIES

7. Plaintiff, BRAVE LION, INC., on behalf of Andrew Clay Silverstein a/k/a Andrew Dice Clay (hereinafter collectively "Clay" or "Andrew Dice Clay"), is a stand-up comedian, actor, musician and producer who resides in Los Angeles, California. BRAVE LION, INC., has its principal place of business at 11766 Wilshire Blvd., Suite 500, Los Angeles, California 90025.

8. Defendant, Pandora, is a Delaware limited liability company with a principal place of business at 2100 Franklin Street, Suite 700, Oakland, California 94612. According to its website, Pandora maintains another corporate office in California, located at 3000 Ocean Park Boulevard, Suite 3050, Santa Monica, California 90405.

## PRELIMINARY STATEMENT

8. Just like with music, there are two copyrights involved in the recorded performance of a literary copyrighted work: a copyright in the sound recording, and a separate copyright in the underlying spoken word composition (Clay's compositions, as noted, are referred to herein as "the Works" or "Clay's Works"). Pursuant to 17 U.S.C. §§ 106 and 204 of the Copyright Act of 1976, copyright owners have the exclusive right to, among other things, reproduce, distribute, license, and publicly perform their works. Anyone wishing to obtain the right to do so, must get a license from the respective copyright owner in both of these copyrights, and pay agreed to royalties. The failure to do so constitutes copyright infringement. As discussed below, Pandora not only did not obtain any copyright in Clay's Works but admitted that it did not do so in Security and Exchange Commission (SEC) filings, and admitted that it would very likely face copyright

infringement liability as a result. But Pandora did what most goliaths do: it decided it would infringe now to ensure it had this very valuable intellectual property on its platform to remain competitive, and deal with the consequences later. Later is now.

## STATEMENT OF FACTS

9. One of the greatest freedoms in the world is the ability to speak freely about any subject or topic. This is why comedians hold such a significant role in society. Many times comedian's express feelings or frustrations that their audiences may want to express themselves but lack the nerve to voice them out loud. Instead, they immerse themselves in comedy routines which have been curated with great care and attention to detail to make their fans feel like their voice and opinions are being heard. In reality, most of us are just living vicariously through the comedians we have come to love and appreciate.

10. Enter stage left: The Diceman, (a/k/a Andrew Dice Clay) one of America's most controversial and outrageous comics. With forty-four (44) years as an active comedian, Mr. Clay's comedic career can be described by the parental advisory on his certified gold debut album *Dice*, "Warning: This album is offensive."

11. Mr. Clay is a stand-up comedian, actor, musician, television and film producer. While some may consider his comedic routines offensive, his brash and blatantly honest persona on stage has won over the hearts of millions of loyal fans who appreciate his character, observational and improvisational comedy as well as his political satire.

12. Mr. Clay has forever left his mark on the entertainment world, and especially in the world of comedy. Mr. Clay was the first comedian to sell out Madison Square Garden two nights in a row, as well as numerous sporting arenas across the country, and in true Diceman-fashion, is the only performer ever "Banned For Life from MTV."

13. Mr. Clay's brutally honest, unapologetic, and uncensored approach to comedy is truly what makes him unique and remarkable amongst other comedians. However, his versatility as an artist far exceeds the comedy stage. As an actor, Mr. Clay has been actively involved in Hollywood, appearing in feature-length films such as *Wacko, Making the Grade, Pretty in Pink, Casual Sex?,* and most recently *A Star Is Born* starring alongside Bradley Cooper, Lady Gaga, Dave Chappelle and Sam Elliot. If that wasn't enough, Mr. Clay found his way to the small screen in television favorites such as *M*A*S*H, Diff'rent Strokes, Crime Story, Entourage,* numerous HBO comedy specials, and *Saturday Night Live*.

14. In 1989, Mr. Clay was named Comedy Act of the Year by *Performance* magazine, and his popular comedy album, *The Day the Laughter Died*, peaked at No. 39 on the *Billboard* 200.

15. No matter the venue or entertainment medium, The Diceman continues to captivate audiences with his superb ability to make people laugh about the realest and most uncomfortable topics, and that's what makes Mr. Clay a comedic legend in his own right.

16. According to www.pandora.com, Pandora is the largest digital broadcast and streaming music provider in the U.S. "providing a highly-personalized listening experience to approximately 70 million listeners and users each month" through "its mobile app, the web, and integrations with more than 2,000 connected products."

17. One would think that entertainment giants like Pandora would honor the legacy of such an amazing talent, and instead it has chosen to illegally profit from the creative mind and literary/comedic works of Mr. Clay.

18. In fact, Defendant has made fifty-seven (57) of the Works available for dissemination to the public via their digital broadcast radio service knowing full well that it did not possess a valid license to publicly perform the Works. (*See*

6
COMPLAINT FOR COPYRIGHT INFRINGEMENT

Exhibit A). In addition to no license, it also made no royalty payments for the Works. The Works are contained on the albums, "Dice", "Dice Rules", "Politically Incorrect (Various Artists)", and "The Day The Laughter Died". Plaintiff has duly complied with all required provisions of the copyright laws of the United States applicable to the Works, including but not limited to, registering copyrights in and to said Works with the United States Copyright Office (*see* Exhibit A for applicable copyright registration numbers) on or about August 18, 1990.

19. Further, it is required by law, and fully understood, that digital service providers, like Pandora, must also get a mechanical digital reproduction license from the owner of the underlying composition in order to make the underlying composition of a recording available for reproduction and distribution through interactive streaming. This is true even where the digital service provider has a license to interactively stream a sound recording. Pandora made all fifty-seven (57) of these Works available via its Pandora Premium interactive streaming service, also knowing full well that it did not possess a valid license to not only publicly perform his works but also no license to distribute and reproduce the Works. Pandora made no royalty payments for the public performance of the Works and no royalty payments for the reproduction of the Works. The end result is Pandora took Clay's Works, gained listeners, subscribers and market share with full knowledge it did not have licenses and made no royalty payments for the Works, to increase its stock price helping it to reorganize the company with Sirius XM (although the two companies remain to this day completely separate corporations) for billions all while depriving Clay of his royalties and the benefits of his ongoing legacy.

20. As of February 1, 2022, www.pandora.com advertised that Andrew Dice Clay had 8,200 monthly listeners. If each listener listened to only one (1) available work per month, that's 98,400 broadcasts or/interactive streams per year

COMPLAINT FOR COPYRIGHT INFRINGEMENT

at a minimum. Unfortunately, Clay has not received a fraction of a penny for any of these broadcasts or streams of the Works from Pandora.

21. For years therefore Pandora has illegally made reproductions and digital broadcasts on its servers and provided streaming access to its users without a proper public performance license and, when applicable, a reproduction right license. This infringement continues on a daily basis as the Works are broadcast on Pandora radio and/or remain available for interactive streaming on Pandora Premium.

22. While it is commonplace in the music industry for companies like Pandora to enter into public performance licensing agreements with performance rights organizations like BMI and ASCAP for musical compositions, these entities do not license literary works. Therefore, it was the responsibility of Pandora to seek out the copyright owners and obtain valid licenses.

23. Pandora only needed to contact one entity, Clay, to obtain the required licenses. Or Pandora could have chosen not to use Clay's Works, particularly since it knew it did not have the required licenses. Instead, Pandora chose to infringe.

24. Clay, through his company, Fleebin Dabble Productions, Inc., entered into a recording agreement with Def American Recordings, Inc., ("Def American") on May 19, 1988 (the "Clay Def American Agreement"). Under the terms of the Clay Def American Agreement, Mr. Clay was obligated to provide his exclusive performance services to Def American, and Def American acquired exclusive ownership rights in the sound recordings of Mr. Clay's comedic performances in perpetuity.

25. Mr. Clay retained his exclusive rights in the Works.

26. Pandora's failure to obtain the necessary licenses for the Works, or pay any royalties for the Works, but to nonetheless infringe by exploiting the Works, has been willful. In Pandora's own SEC 10K public filing with the SEC from 2011

to 2017, three quarters of a decade, Pandora admitted in its Risk Factors ever year that it performs spoken-word comedy content "absent a specific license from any [] performing rights organization" and it has never obtained a license for the underlying literary works for the sound recordings of spoken-word comedy content that it streams. Pandora further admitted that it "could be subject to significant liability for copyright infringement and may no longer be able to operate under [their] existing licensing regime." This admission was only removed, not so coincidentally, after Pandora's transaction with Sirius XM Radio.

27. Pandora nonetheless did not even take the simplest of steps to ask Clay or his representatives for the any of the proper licenses for the Works. To the contrary, beginning in or about August of 2020, Word Collections ("WC"), a Spoken Word/Literary Works Collection Agency contacted Pandora in an effort to negotiate a licensing agreement for various copyright owners. From that initial contact and on an ongoing basis over the course of the following year, WC made numerous efforts on behalf of WC's other spoken word/literary works clients, including on behalf of Clay beginning in April 2021, to engage Pandora in good faith negotiations, to no avail.

28. While Pandora's counsel wrote on September 14, 2021 to advise that counsel would respond with Pandora's position about unlicensed spoken word content appearing on Pandora's platform, no substantive response from Pandora or its counsel has been sent or received.

29. As the Diceman might say, Pandora and Dice went up the hill, but Pandora came down with all the money.

## CAUSE OF ACTION

**(Copyright Infringement – 17 U.S.C. § 501)**

30. Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

31. Plaintiff is the legal and beneficial owner of the United States copyrights in the Works, duly registered with the United States Copyright Office, (See Exhibit A), as discussed above.

32. Defendant has directly, vicariously, and/or contributorily infringed and/or induced infringement of Plaintiff's copyright in violation of 17 U.S.C. § 501.

33. Defendant has publicly performed, broadcasted, and provided its listeners/users of the Works, as discussed hereinabove.

34. Defendant's acts were performed without authorization, license, or consent. Defendant's unauthorized and unlicensed reproduction, distribution, public performance and display of the Works infringes Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 106 *et. seq*.

35. Defendant's infringement has been and continues to be, willful, intentional, purposeful, and with complete disregard to Plaintiff's rights.

36. As a direct and proximate result of Defendant's infringement, Plaintiff has been irreparably harmed.

37. Defendant has infringed Plaintiff's copyright interest in the Works by making reproductions and digital broadcasts on its servers and provided streaming access to its users without a proper public performance and, when applicable, reproduction rights license.

38. Plaintiff has received no royalties or payments for the Works embodied in the sound recording of the underlying literary compositions.

39. Defendant has continued to market, exploit, reproduce, distribute, and publicly perform the Works through this day, which violates Plaintiff's copyrights and are at issue in this lawsuit.

40. Defendants had knowledge and have admitted that it did not and does not possess a valid public performance license for the Works at issue, and with that knowledge of infringement, continued to infringe upon Plaintiff's copyrights.

41. The infringement is continuing as the Works continue to be exploited, performed, broadcast, and streamed across Defendant's applicable platforms, and/or their agents.

42. As a direct and proximate result of Defendant's infringement, pursuant to 17 U.S.C. § 504(a)(1) and (b), Plaintiff is entitled to actual damages in addition to Defendant's profits both domestically and relating to foreign sales of other exploitation of the Works that were distributed, performed, broadcast, or otherwise infringed domestically. Further, Plaintiff is entitled to a running royalty on all future exploitations of the Works following judgement in an amount to be determined.

43. In the alternative to profits and actual damages, pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to the maximum amount of statutory damages, $150,000 per copyrighted work for each act of copyright infringement, for a total of $8,550,000 ($150,000 times 57 registered Works).

44. As a direct and proximate result of Defendant's infringement, Plaintiff has incurred attorneys' fees and costs which are recoverable pursuant to 17 U.S.C. § 505.

45. Defendant's conduct has caused, is continuing to cause, and will further cause great damage to Plaintiff, which damages cannot be accurately measured in monetary terms, and therefore, unless enjoined by the Court, Plaintiff will suffer irreparable injury, for which Plaintiff is without adequate remedy at all. Accordingly, Plaintiff is entitled to a permanent injunction pursuant to 17 U.S.C. § 502 following judgment, prohibiting further infringement, reproduction, distribution, sale public performance, other use, or exploitation of Plaintiff's copyright without a proper license.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief, as follows:

46. For Judgment in favor of Plaintiff and against Defendant.

47. For a declaration and finding that Defendant has willfully infringed Plaintiff's copyrighted work in violation of the Copyright Act;

48. For declaration and finding that Defendant is directly, vicariously, and/or contributorily liable for copyright infringement pursuant to 17 U.S.C. § 504(a)(1) and (b), including a finding that Defendant is liable for actual damages, as well as for Defendant's profits;

49. For an accounting of all profits, income, receipts, or other benefits derived by Defendant from the production, copying, display, promotion, distribution, broadcast, public performance, or sale of products and services or other media, either now known or hereafter devised, that improperly or unlawfully infringe Plaintiff's copyright pursuant to 17 U.S.C. § 504(a)(1) and (b);

50. For statutory damages, upon election prior to final judgment in the alternative to actual damages and profits, for willful copyright infringement pursuant to 17 U.S.C. § 504(c);

51. For costs of suit herein, including an award of attorneys' fees pursuant to 17 U.S.C. § 505;

52. For pre-judgment and post-judgment interest;

53. For a running royalty and/or ownership share in the Infringing Work following judgment in an amount to be proven at trial, or in the alternative, for the entry of an injunction requiring Defendants, their officers, agents, servants, employees, representatives, successors, licensees, partners, attorneys, and assigns, and all persons acting in concert or participation with each or any one of them to be permanently enjoined from directly or indirectly infringing, reproducing, displaying, promoting, advertising, distributing, or selling any work that infringes,

contributorily infringes, or vicariously infringes Plaintiff's rights in the work protected by the Copyright Act;

54. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), and otherwise, Plaintiff respectfully demands a jury trial on all issues raised in this complaint.

PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38(b), AND OTHERWISE, PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES RAISED IN THIS COMPLAINT.

Dated: February 7, 2022                    Respectfully submitted,

                                                        By: /s/ Richard S. Busch
                                                        Richard S. Busch
                                                        Attorney for Plaintiff